## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ROGER GLEN McCLAFLIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-1128-CG** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Roger Glen McClaflin brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. The parties have consented to the jurisdiction of a United States Magistrate Judge. Doc. No. 23. Upon review of the administrative record (Doc. No. 18, hereinafter "R. _")[1] and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the case for further administrative proceedings.

---

[1] With the exception of the administrative record, which was filed conventionally, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

## PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits ("DIB") and SSI on May 25, 2005, alleging a disability onset date of January 1, 2001. *See* R. 22, 74-81, 228-30. Over the next nine years, there were four administrative hearings before Administrative Law Judges ("ALJ"), the latter three of which were occasioned by successful appeals to the SSA Appeals Council ("AC"). These are summarized as follows:

- Following denial of Plaintiff's applications initially and on reconsideration, the first hearing was held on June 14, 2007. R. 221-23, 224-27, 704-31. At this hearing, Plaintiff amended his alleged onset date to May 25, 2005, which extinguished his claim for DIB. R. 716. The ALJ issued an unfavorable decision on June 26, 2007. R. 234-40. Upon appeal, the AC remanded the matter for further consideration in part because the ALJ did not adequately evaluate Plaintiff's "severe" depressive disorder and alcohol dependence. R. 241-44, 245.

- The second hearing was held on December 10, 2008, before a different ALJ who denied Plaintiff's claim on February 4, 2009. R. 293-304, 681-703. Upon appeal, the AC remanded the matter for further consideration in part because the "record [was] unclear regarding the nature and severity of [Plaintiff's] mental impairments and any resulting work-related limitations," and the ALJ failed to "discuss and assign weight to"

2

a state-agency consultant's medical opinions of Plaintiff's depressive disorder, panic disorder, and substance-abuse disorder. R. 306-09, 327.

- The third hearing was held on December 22, 2009, for which Plaintiff waived his right to appear but Plaintiff's representative was present. R. 665-80. The ALJ issued an unfavorable decision on June 8, 2010. R. 313-22. Upon appeal, the AC remanded the matter for further consideration in part because the ALJ did not obtain the evidence required to properly evaluate Plaintiff's mental impairments and work-related limitations. R. 323-26, 346.

- The fourth hearing was held on February 13, 2012, before a different ALJ. R. 637-64. Plaintiff again waived his right to appear, but his representative was present. *Id.* The ALJ issued an unfavorable decision on August 9, 2012. R. 19-31. On June 16, 2014, the AC denied Plaintiff's request for review. R. 11-14, 15.

The AC's denial of the final appeal means that the August 9, 2012 ALJ decision is the final decision of the Commissioner. R. 11; *see* 20 C.F.R. § 416.1481. This action for judicial review followed.

ADMINISTRATIVE DECISION

A person is "disabled" within the meaning of the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920(a)(4). However, additional analysis is required when an ALJ finds that a claimant is disabled but there is medical evidence of drug addiction and alcoholism ("DAA") in the record. 20 C.F.R. § 416.935(a). In that circumstance, the ALJ must determine whether the DAA is a material contributing factor to the claimant's disability, with the "key factor" being whether the ALJ "would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1). The ALJ must evaluate which of the claimant's disabling physical and/or mental limitations would remain if the claimant stopped using drugs or alcohol, and then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2). If the ALJ finds that a claimant's remaining limitations would not be disabling, then the DAA is a material contributing factor to the claimant's disability and the ALJ must conclude that the claimant is not disabled. 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935(b)(2)(i). If the ALJ finds that the remaining limitations would in and of themselves be disabling, then the ALJ must conclude that the claimant is disabled. 20 C.F.R. § 416.935(b)(2)(ii).

In the decision at issue here, the ALJ at step one found that Plaintiff had not engaged in substantial gainful activity since May 25, 2005, the application date. R. 22; *see* 20 C.F.R. § 416.971. At step two, the ALJ determined that Plaintiff had severe impairments of hypertension; degenerative disc disease of the lumbar spine; alcohol dependence; major depressive disorder, recurrent, moderate; and panic disorder, without

agoraphobia.  R. 22; *see* 20 C.F.R. § 416.920(c).  At step three, the ALJ determined that Plaintiff's impairments met the medical criteria of sections 12.04, 12.06, and 12.09, presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  R. 25; *see* 20 C.F.R. § 416.920(d).  These impairments are Affective Disorders, Anxiety Related Disorders, and Substance Addiction Disorders, respectively. 20 C.F.R. pt. 404, subpt. P app. 1 §§ 12.04, 12.06, 12.09.

Having found that Plaintiff's impairments met at least one Listing (and thus that Plaintiff was disabled) when the effects of substance abuse were considered, the ALJ then considered whether Plaintiff's DAA was a material contributing factor to Plaintiff's disability.  *See* 20 C.F.R. § 416.935(a).  To do so, the ALJ re-evaluated Plaintiff as if he had stopped using alcohol.  *See* R. 27-31.  At the reconsidered step two, the ALJ found that if Plaintiff "ceased alcohol abuse, the remaining limitations would cause more than a minimal impact on [Plaintiff's] ability to perform basic work activities; therefore [Plaintiff] would continue to have a severe impairment or combination of impairments," including major depressive disorder and panic disorder without agoraphobia.  R. 27.  At the reconsidered step three, the ALJ found that Plaintiff's remaining severe impairments or combination of impairments would not meet or medically equal the impairments in Listings 12.04 or 12.06.  R. 27-28.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his remaining impairments.  R. 28-30; *see* 20 C.F.R. §§ 416.920(a)(4)(iv), .935(b)(2).  The ALJ found that if Plaintiff "ceased alcohol abuse," he would have the RFC to perform "medium work," subject to additional specifications and limitations that

Plaintiff can only "understand, remember and carry out simple and detailed, but not complex or involved, instructions and have only superficial, incidental work related type contact with the general public, co-workers, and supervisors." R. 28-30; *see* 20 C.F.R. § 416.967(c) (defining "medium work"). At step four, the ALJ found that if Plaintiff "ceased alcohol abuse," he would be able to perform his past relevant work as a security guard or electrician helper. R. 30-31; *see* 20 C.F.R. §§ 416.965, .968. On that basis, the ALJ determined that Plaintiff's DAA is material to the determination of disability and, therefore, Plaintiff had not been under a disability as defined in the Social Security Act at any time from May 25, 2005, to August 9, 2012, the date of the decision. R. 31; *see* 20 C.F.R. § 416.935(b)(2)(i).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the ALJ's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at

1052 (internal quotation marks omitted).  While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner.  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## RELEVANT MEDICAL EVIDENCE

A review of Plaintiff's medical record regarding his mental impairments reveals the following relevant evidence.  On September 8, 2005, Plaintiff was referred to Richard Kahoe, PhD, by the SSA for a consultative mental-status exam.  R. 182-86.  Dr. Kahoe observed that Plaintiff's mental status was mostly within normal limits, except that Plaintiff's speech was at times "excessive" and "tangential," and he portrayed "poor" "[i]nsight into his own psychological functioning and adjustment."[2]  R. 182, 185.  Dr. Kahoe noted that Plaintiff had a history of alcohol abuse for most of his adult life, and diagnosed Plaintiff with major depressive disorder, recurrent, moderate; panic disorder without agoraphobia; and alcohol dependence.  R. 184-85.  He also assessed Plaintiff with a GAF score of 55.[3]  R. 185.

---

[2] In July 2005, Plaintiff completed an Adult Function Report describing how his medical impairments limited his daily activities and ability to complete work-related tasks. R. 112-19.  Plaintiff reported what he did not handle stress "well," but he did not report any trouble remembering, understanding, following instructions, or getting along with others. R. 118-19.

[3] A GAF score "represents a clinician's judgment of the individual's overall level of functioning" at a given time, using a scale of 1 to 100.  Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. 2000) ("DSM-IV").  As relevant here, GAF scores in the following ranges reflect the following psychological symptoms or functional limitations:

Reviewing consultant Ron Smallwood, PhD, completed a Psychiatric Review Technique ("PRT") form and a Mental Residual Functional Capacity ("MRFC") assessment on November 16, 2005, evaluating Plaintiff's medically determinable mental impairments and related functional restrictions based on a review of the medical and other relevant evidence available through November 2, 2005. R. 190-204, 205-08, 224. Dr. Smallwood opined that, despite his severe depressive disorder and panic disorder, Plaintiff remained mentally capable of completing "simple and some complex tasks" within "customary tolerances," interacting "appropriately with co-workers and supervisors on a superficial level," and adapting "to change in work settings." *See* R. 190, 193, 195, 205-07. Dr. Smallwood also noted Plaintiff's "extensive chemical dependency problem, which could be self-medicating." R. 204.

On April 14, 2008, Plaintiff was treated at St. Mary's Regional Medical Center Emergency Room ("St. Mary's ER") for intoxication and a suicidal gesture. R. 463-71.

---

•51-60: Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

•41-50: Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

. . . .

•21-30: Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012) (quoting DSM-IV 34).

He was subsequently transferred to the Northwest Center for Behavioral Health ("NWCBH") for emergency detention and admitted on April 15, 2008, with a GAF score of 29. R. 287-89. While at NWCBH, Plaintiff received Celexa (citalopram, an antidepressant), Ativan (lorazepam, a benzodiazepine used to treat alcohol withdrawal symptoms and anxiety), and Clonidine (a sedative used to treat hypertension and anxiety[4]), among other medications. R. 284. The NWCBH progress notes include observations about Plaintiff's mental status but it is unclear to what extent Plaintiff received therapy unrelated to alcohol detoxification. R. 285 (documenting normal mental-status exams during these meetings); *see also* R. 298 (noting that Plaintiff stayed at NWCBH "for approximately twenty days to detox off alcohol" in May 2008). He was released from NWCBH on May 7, 2008, with a GAF score of 55 and a "guarded" prognosis "due to the chronicity of his alcoholism." R. 283-86.

Additional medical records from 2008 indicate that Plaintiff was treated at St. Mary's ER on July 28th, October 14th, November 5th, and November 24th; each set of records indicates that Plaintiff was still regularly drinking alcohol and was intoxicated and/or suicidal each time he arrived at the ER. R. 455-60, 515-20, 525-31, 534-37. Medical records from the October 14th and November 5th ER visits indicate that Plaintiff had suicidal thoughts, and the October 14th ER visit resulted in Plaintiff again being transferred to NWCBH for emergency detention from October 14th through October

---

[4] In Plaintiff's case, it appears that the prescription of Clonidine was intended to treat hypertension. *See* R. 284 (referencing blood pressure in connection with use of Clonidine).

23rd. R. 533-41, 527, 530, 277-82. He was admitted to NWCBH with a GAF score of 29 and released with a GAF score of 54, again with a "guarded" prognosis given his "long history of alcoholism and [neglect of] his physical ailment[s], partly due to lack of access to care." R. 277-82. While at NWCBH, Plaintiff received Ativan and Clonidine, among other medications, and "attended groups and activities on the unit." R. 278. On discharge, Plaintiff "met his goal of explaining life changes that were necessary for him to maintain his sobriety." R. 278. He was not prescribed any medication specifically for depression. R. 278-79.

On February 10, 2009, Plaintiff was treated at St. Mary's ER for suicidal ideation and alcohol abuse. R. 445-52. He was transferred to NWCBH for emergency detention and released February 26th. R. 435-38. On intake, Plaintiff reported that he was taking Clonidine and his mental status was observed to be within normal limits except for his "depressed" affect. R. 437. Pages are missing from the records of this NWCBH treatment. R. 435-38. *But see* R. 441 (later NWCBH treatment note documenting that Plaintiff was hospitalized in February 2009 for "SI/detox" but "did not receive scheduled detox during that admission"). The Release Summary states that Plaintiff's GAF score upon admittance (his "initial diagnostic impression" "[b]rought forward from the Psychiatric Evaluation") was 29. *See* R. 435-38. Plaintiff's GAF score upon release, if any, is missing. *See* R. 435-36. Any listing of treatment received is also missing, though it appears that he was prescribed Zoloft (sertraline, an antidepressant used to treat depression, panic disorder, and anxiety) and Clonidine, among other medications. *See* R.

442 (later NWCBH treatment note documenting Plaintiff's "current medications"). His prognosis "remain[ed] guarded" given his "long history of alcoholism." R. 436.

Medical records indicate that Plaintiff was again treated at St. Mary's ER on April 23rd, May 1st, and May 11th. R. 501-13, 494-500, 485-93. Those records indicate that Plaintiff was still regularly drinking alcohol during that time period. *See* R. 486, 495-98, 505-07, 510-11. Plaintiff was then voluntarily admitted into NWCBH on May 15, 2009, and released on May 22, 2009. R. 431-32, 441-44. Intake records show that Plaintiff sought treatment for "major depression, alcoholism, and suicidal tendencies," denied current suicidal ideation (but reported suicidal thoughts the previous week), and reported that his "last drink was yesterday." R. 441-44. Plaintiff admitted that he "quickly return[ed] to drinking soon after [his previous] discharge" from NWCBH in February 2009, and that he never filled his Zoloft prescription even though "he thought [it] was helpful." R. 441. Plaintiff's GAF score upon admittance was 45, but the record page that might show his GAF score upon release is missing. R. 443; *see* R. 431-32. While at NWCBH, Plaintiff restarted Zoloft, Clonidine, and Ativan (the last of these being intended for "signs/symptoms of withdrawal"). R. 443-44. After his release from NWCBH, Plaintiff sought treatment at the St. Mary's ER on May 29, 2009, for dizziness, and attended an outpatient "rehabilitation" appointment at NWCBH on June 5, 2009. R. 472-84, 440. Those medical records do not clearly indicate whether Plaintiff was sober at the time of treatment, though the ER record indicates that Plaintiff reported a history of drinking a substantial amount of alcohol every day. R. 477-78; *see also* R. 440.

The medical records from 2010 do not include any inpatient treatment notes, but indicate that Plaintiff was treated at St. Mary's ER four times, three times after falls and once for anxiety. R. 607-26. Treatment notes from two ER visits indicate that Plaintiff was intoxicated and/or still regularly drinking alcohol; notes from the other two visits are radiology reports and provide no indication of Plaintiff's sobriety. R. 610, 612, 615-26. One outpatient treatment note from NWCBH indicates that Plaintiff was not taking unidentified psychotropic medication(s) that had been prescribed sometime before August 23, 2010. R. 605; *see also* R. 614 (October 13, 2010 St. Mary's ER record documenting that Plaintiff had been prescribed Librium for "mental health" but that his dosage instructions and last dose were "unknown," and that Plaintiff had been prescribed Clonidine for hypertension but his last dose was more than three weeks ago).

ANALYSIS

The parties agree that at issue in this appeal is whether the ALJ's finding that Plaintiff's alcohol use was a contributing factor material to his listing-level disability is consistent with the governing law and supported by substantial evidence in the record. *See generally* Pl.'s Br. (Doc. No. 22) at 6, 11-16; Def.'s Br. (Doc. No. 29) at 7-13. Plaintiff argues that "the ALJ based his materiality finding on reasons that are inappropriate according to the standards applicable to claimants with mental disorders that co-occur with their substance abuse," and cites to Social Security Ruling 13-2p, 2013 WL 621536 (Feb. 20, 2013). Pl.'s Br. at 12. The Commissioner responds that the ALJ "reasonably relied" on all of the relevant evidence in the record to support his finding that

Plaintiff's "mental health limitations were [materially] related to his alcohol abuse." Def.'s Br. at 8.

### A. Evidence Required for Determination of DAA Materiality

As noted above, an individual "shall not be considered to be disabled" if drug abuse or alcoholism is a material contributing factor to the disability. 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935(a). The SSA has published policy interpretation rulings, the latest version of which is SSR 13-2p, 2013 WL 621536, setting forth the process to be followed in conducting a DAA materiality inquiry.[5] This process includes that, when the claimant has at least one other medically determinable impairment that could be disabling by itself, the ALJ must determine whether the other impairment might improve to the point of nondisability if the claimant were to stop using drugs or alcohol. SSR 13-2p, 2013 WL 621536, at *7. This step requires the ALJ to "project the severity of the claimant's other impairment(s) in the absence of DAA." *Id.*

With respect to co-occurring mental disorders, such as Plaintiff's depression and panic disorder, the SSA acknowledges that it knows of no research data it can use to "predict reliably that any given claimant's co-occurring mental disorder would improve,

---

[5] Social Security Ruling 13-2p was published on February 20, 2013, and became effective on March 22, 2013. SSR 13-2p, 2013 WL 621536, at *1. Because the ALJ's decision in this case was issued on August 9, 2012, the ALJ did not—and was not expected to— consider the materiality of Plaintiff's DAA using the SSR 13-2p analysis. *See* R. 31. The AC, however, was obligated to consider the requirements of SSR 13-2p when it issued its decision denying review. The AC denied review on June 16, 2014, which was after the effective date of the Ruling. *See* R. 11. Though an SSR does not have the same force and effect as statutes or resolutions, by its terms, SSR 13-2p is "binding on all [SSA] components." SSR 13-2p, 2013 WL 621536, at *1. The Appeals Council order says that it applied "the laws, regulations and rulings in effect as of the date we took this action." R. 11-14.

or the extent to which it would improve, if the claimant were to stop using drugs or alcohol." *See id.* at *9. To make a finding that DAA is material in such a case, then, the ALJ "must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA." *Id.* In contrast to cases involving physical impairments, the ALJ is not permitted to "rely exclusively on medical expertise and the nature of a claimant's mental disorder" to support a finding that DAA is material. *Id.*

If "the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA," the claim will be allowed. *Id.* Further, in considering periods of abstinence, "[i]f the evidence in the case record does not demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorder(s)," the SSA "will find that DAA is not material." *Id.* at *12. To that end, the ALJ must be especially careful when evaluating evidence demonstrating that the claimant's co-occurring mental disorder(s) improved when he or she received mental health and/or substance abuse treatment in "a highly structured treatment setting," such as a hospital or residential rehabilitation center. *See id.* at *12-13; *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002).

### B. The ALJ's Decision

The ALJ first found that Plaintiff is disabled because his severe "mental impairments, including [his] alcohol dependence, meet the medical criteria of [Listings] 12.04, 12.06, and 12.09." R. 25. In making this determination, the ALJ found that the

"Paragraph A" criteria in both Listing 12.04 (affective disorders, depressive syndrome) and Listing 12.06 (anxiety-related disorders) were "satisfied based on the findings and opinions" reflected in the PRT form that Dr. Smallwood completed in November 2005. R. 26; *see* R. 190, 193, 195; 20 C.F.R. pt. 404, subpt. P app. 1 §§ 12.04(A), 12.06(A). The ALJ also cited Dr. Smallwood's opinion that the medical record contained evidence of "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." *See* R. 25, 198; 20 C.F.R. pt. 404, subpt. P app. 1 § 12.09(B)-(C). Relying upon the testimony of Betty Feir, PhD, the medical expert who testified at Plaintiff's February 2012 hearing, the ALJ also found that Plaintiff had "marked" limitations maintaining activities of daily living, social functioning, and concentration, persistence, or pace when he abused alcohol. R. 26; *see* 20 C.F.R. pt. 404, subpt. P app. 1 §§ 12.04(B), 12.06(B).

The ALJ then found Plaintiff's alcohol abuse to be material to the finding of disability. R. 27. Relying again on Dr. Feir's testimony, the ALJ stated:

> [T]he impartial medical expert testified that, without abusing alcohol, the claimant had no greater than "moderate" limitations as to his ability to perform activities of daily living[;] social functioning[;] and concentration, persistence and pace. The impartial medical expert testified that the record established that the claimant did have periods of sobriety. As noted above, when the claimant entered into medically supervised detoxification program in 2008 with GAF score of 29 and came out with GAF score of 55 (Exhibit 13F). In fact, the impartial medical expert opined that, if the claimant only "moderately" abused alcohol, he would have only "moderate" mental symptoms and, if he had not abused alcohol at all (as well as being medication and treatment compliant), there was a possibility that he would have exhibited no mental symptoms at all. Accordingly, the claimant's alcohol abuse is "material" to the finding of disability above.

R. 27; *see also* R. 638, 641-49.  At the next step of the DAA analysis, the ALJ found that

if Plaintiff ceased alcohol abuse he would still have "severe" medically determinable

mental impairments of major depressive disorder and panic disorder, but those

impairments would not meet or medically equal Listing 12.04 or Listing 12.06, as they

did when Plaintiff abused alcohol.  R. 27.  As support for this finding, the ALJ stated:

> During a period of sobriety in 2009, the impartial vocational expert noted
> that the claimant's symptoms were in the "moderate" range.  Dr. Feir
> testified that, in 2005, Dr. Kahoe diagnosed the claimant with only
> "moderate" depression and panic disorder without agoraphobia and
> assessed the claimant with GAF score of 55 (Exhibit 4F).  In May 2009, he
> [w]as noted to be sober and only had "moderate" symptoms, with a GAF
> score of 58 (Exhibit 14F).  In June 2009, he was assessed with a "normal"
> mood and a GAF score of 58 (Exhibit 15F).  It appears that, during periods
> of sobriety, the claimant was more compliant with medication and
> treatment, thus diminishing the symptomology of his other mental
> impairments.  Such findings are also consistent with the claimant's reported
> activities and abilities in periods of sobriety, to-wit: the claimant reported
> that he prepared simple meals, cared for his dogs, and had a garden.  He
> rode a bike, watched TV, read, cleaned and did laundry.  He used a
> microwave.  He could follow instructions and had no problems with
> authority (Exhibits 6E and 6F).

R. 27.  Finally, the ALJ summarized his finding of DAA materiality as follows:

> The undersigned gives great weight to the opinions of the impartial medical
> expert, Dr. Feir; alcohol is material and the claimant is capable of simple
> and detailed instructions without alcohol use.  Dr. Feir felt that if there was
> no alcohol abuse, with proper treatment and complete compliance with
> medications, the claimant could have no significant mental limitations.
> Even though the claimant's representative tried to cast doubt, the evidence
> of record and medical expert's testimony is clear that alcohol abuse is the
> claimant's primary problem.  All other impairments are significantly less
> severe as alcohol impacts on all of the claimant's impairments, both
> physical and mental, as he fails to take care of himself and fails to be
> compliant with treatment and medications.  Thus, without alcohol abuse,
> the evidence of record and the testimony of the impartial medical expert
> establish[] that the claimant could function at a very close to normal level.

R. 30.

The ALJ based his materiality decision on Dr. Feir's testimony and medical records containing observations of Plaintiff's functioning immediately following instances of hospitalization. *See* R. 27, 30. However, as made clear by SSR 13-2p, when there are co-occurring mental disorders in addition to a claimant's DAA, the ALJ must be able to separate the effects of the two types of impairments in order to find DAA material—"the ALJ must take on the difficult task of untangling the warp threads of the claimant's substance abuse from the woof threads of the claimant's other impairments in order to examine the hypothetical cloth that remains." *Malone v. Colvin*, No. CIV. 12-3098, 2014 WL 348590, at *3 (W.D. Ark. Jan. 31, 2014); *see also* SSR 13-2p, 2013 WL 621536, at *9, *12;[6] *Young v. Colvin*, No. 3:13-CV-03489-M, 2014 WL 4851565, at *29 (N.D. Tex. Sept. 30, 2014) ("These sections [SSR 13-2p, 2013 WL 621536, at *9, *12] essentially require the ALJ to find evidence of separate effects of DAA and the co-occurring mental disorders"); *cf. Salazar v. Barnhart*, 468 F.3d 615, 623 (10th Cir. 2006) (discussing teletype that preceded SSR 13-2p and explaining that "if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the DAA is *not* a contributing factor material to the disability determination"). Here neither of the bases relied upon by the ALJ adequately separate the effects of Plaintiff's

---

[6] "We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA[,]" SSR 13-2p, 2013 WL 621536, at *9; and "[i]f the evidence in the case record does not demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorder(s), we will find that DAA is not material," *id.* at *12.

alcohol abuse from the effects of his co-occurring mental disorders of depression and anxiety and, as such, they do not rise to the level of substantial support for the ALJ's decision.

1. Dr. Feir's Testimony

The ALJ made the critical finding that if Plaintiff were to cease his alcohol abuse, his remaining mental impairments and limitations would not be severe enough to preclude work activity. R. 27-31. In support of this finding, the ALJ primarily relied upon the testimony of the medical expert Dr. Feir, who did not examine Plaintiff. R. 27, 30. Dr. Feir testified that without alcohol Plaintiff "might still have depression" but would have only "moderate limitations" in activities of daily living; social functioning; and concentration, persistence and pace. R. 641, 644. The Tenth Circuit "has long held that 'findings of a nontreating physician based upon limited contact and examination are of suspect reliability.'" *McGoffin*, 288 F.3d at 1253 (quoting *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987)). Moreover, if an ALJ "relies heavily" on a non-examining physician's opinion, "the opinion[] must [itself] find adequate support in the medical evidence." *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)). Here, as in *McGoffin*, the undersigned does not believe that Dr. Feir's testimony "will bear the weight placed upon it by the ALJ." 288 F.3d at 1253.

a. *Improvement in GAF Scores Following Hospitalization*

In explaining the reasons for her opinion, Dr. Feir first cited an improvement in Plaintiff's GAF scores when he was hospitalized at NWCBH in 2008. *See* R. 642, 648.

Dr. Feir stated that "[Plaintiff] went into a detox with a GAF score of 29 but came out with a GAF score of 55, just to show you how alcohol is material in his particular case, and I'm talking about the [NWCBH] back in 2008." R. 642. While Dr. Feir's statement accurately describes the change in Plaintiff's GAF scores, it inaccurately describes the April 2008 hospitalization as being *only* for alcohol abuse. *See* R. 285, 288, 642. NWCBH was not simply a "detox" program but an acute inpatient psychiatric unit offering a highly structured treatment environment. R. 283. The pertinent records state that Plaintiff's emergency detention was due to suicidal ideation and he was prescribed an antidepressant. R. 283-89. Thus, Plaintiff's April 2008 hospitalization involved at least some amount of "treatment for [his] co-occurring mental disorder," SSR 13-2p, 2013 WL 621536, at *12, in addition to the "medically supervised detox," R. 642.

Dr. Feir also cited similar improvements in Plaintiff's GAF scores following hospitalizations at NWCBH in 2009:

> [W]hen he's been sober he had a GAF score as high as 58 according to the Mental Health Center record. So when you start looking at those kinds of GAF scores sober, it does not appear that he would have significant limitations if he could stay clean and sober and have treatment for his depression. 58 is only moderate. . . . [I]t does state in the record that for the year of 2009, at least, when he did have more sobriety, that he has GAF scores that were in the moderate range.

R. 648-49. Dr. Feir did not specify which record she was referring to but Plaintiff received inpatient treatment at NWCBH twice in 2009: (i) from February 10 to 26, 2009, and (ii) from May 15 to 22, 2009. As discussed above, the medical records for these

hospitalizations are not complete.[7]  R. 431-34, 435-38, 441-43.  The GAF score assigned upon Plaintiff's admittance for the February 2009 hospitalization was 29, and for the May 2009 hospitalization it was 45.  The GAF scores assigned upon Plaintiff's respective discharges do not appear in the record.[8]

As noted, SSR 13-2p—adopted after the final ALJ decision in this matter but before the AC's denial of review—mandates special care when evaluating simultaneous substance abuse and psychiatric treatment in facilities like NWCBH, stating "[i]mprovement in a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use. . . ."  SSR 13-2p, 2013 WL 621536, at *12-13.  Thus, in cases where a claimant received at least some treatment for the co-occurring mental disorder in a highly structured or supportive treatment setting , the Tenth Circuit has held that an ALJ may

_____

[7] The similarity of surrounding circumstances indicates that, like his April 2008 hospitalization, Plaintiff received some amount of psychiatric treatment during the course of the two 2009 NWCBH hospitalizations, but the absence of records prevents confirmation of that indication.  Records relevant to the May 2009 hospitalization reflect that Plaintiff was prescribed the antidepressant Zoloft after he had failed to fill that prescription upon being discharged from NWCBH in February 2009.  *See* R. 431-34, 441-43.  For the February 2009 hospitalization, the listing of therapy and medication received while hospitalized is among the missing pages from the release records.  *See* R. 435-36.

[8] Regarding the February 2009 discharge GAF score, it is possible that score was a 58.  *See* R. 443 (NWCBH record stating, at time of Plaintiff's admission for May 2009 hospitalization, that a GAF score of 58 was the "highest [in the] past year" for Plaintiff).  Regarding the May 2009 discharge GAF score, Plaintiff mistakenly states that it was 45 but that was the score upon admission.  *Compare* Pl.'s Reply (Doc. No. 30) at 3, *with* R. 443.

not rely solely on improvement during the course of the that treatment in making a DAA materiality determination. *See, e.g.*, *McGoffin*, 288 F.3d at 1253 (finding that when improvement occurs in residential treatment programs where the claimant "is in a structured environment . . . , highly medicated, and in intensive therapy," those factors "presumably contribute[]" to any improvement); *Salazar*, 468 F.3d at 624 (noting that plaintiff's mental problems improved only after "five days in a structured environment and receiving antipsychotic medication").

Here, it is possible that the ALJ and/or a medical expert could find, upon careful review of the records, that Plaintiff's hospitalizations in 2008 and 2009 concerned alcohol abuse treatment to such a degree that any improvement would be probative evidence in distinguishing between the functionally limiting effects of Plaintiff's alcohol abuse and the functionally limiting effects of his depression and panic disorder. But such improvement is not a proper basis for a DAA materiality determination when there is nothing in the decision at issue, or in Dr. Feir's testimony, that distinguishes between the effects of Plaintiff being "sober" and the effects of him receiving psychological/pharmacological treatment for depression and panic disorder, his "severe" co-occurring mental impairments. *See* SSR 13-2p, 2013 WL 621536, at *12-13; *Carrion v. Colvin*, No. CIV-14-369-SPS, 2015 WL 5709510, at *5 (E.D. Okla. Sept. 29, 2015) (relying on SSR 13-2p to find that the ALJ's exclusive "[r]eliance on improvement while in the highly structured environment of a hospitalized stay . . . is improper").

SSR 13-2p requires "evidence from outside of [the discussed] highly structured treatment settings demonstrating that the claimant's co-occurring mental disorder(s) has

improved, or would improve, with abstinence." SSR 13-2p, 2013 WL 621536, at *13. Dr. Feir's testimony regarding post-hospitalization improvement in 2008 and 2009, as shown by GAF scores, is not substantial evidence under this standard.

### b. Plaintiff's Education, Intelligence, and Work History

Defendant argues that, in addition to these GAF scores, Dr. Feir based her opinion on other findings, including that Plaintiff was highly educated and intelligent and "had performed the job of geology technician even during a time when he may have been using alcohol." *See* Def.'s Br. at 11 (citing R. 642-47).

Dr. Feir's reference to Plaintiff's intelligence and education is not meaningful to the question at hand. Intelligence and education do not insulate one from the effects of behavioral conditions such as depression and anxiety; nor do they insulate one from the effects of alcohol abuse. Defendant does not explain how these factors would give any insight into whether alcohol abuse was a material contributing factor to Plaintiff's disability.[9] *See generally* SSR 13-2p, 2013 WL 621536, at *9 ("[W]e must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA."); *Elliott v. Astrue*, No. 07-cv-01922-LTB, 2008 WL 2783486, *9 (D. Colo. 2008) ("[T]he various reasons relied upon

_____

[9] There are also inconsistencies in the record regarding both Plaintiff's intelligence and his education. *See, e.g.*, R. 87 (Plaintiff completed two years of college), 183 (Plaintiff's intellectual ability estimated in the average range, with indications of moderate decline), 184 (Plaintiff's reading level at beginning 7th grade level), 185 (Plaintiff completed two years of college curriculum), 281 (Plaintiff is of average intellectual capacity), 281 (Plaintiff attended Ft. Hays State College, Berkeley, and MIT, and has degrees in geology and geophysics), 287 (Plaintiff has a master's degree in geology), 288 (Plaintiff's intellectual functioning is above average).

by the ALJ . . . [do] not serve as evidence to separate the effects of Plaintiff's mental impairments from the effects of her substance abuse.").

As to Plaintiff's work history, Dr. Feir testified:

> He has been, I believe, a geologist. . . . He was working, according to the medical records, as a geology technician so I don't know whether that's true that he has a Master's Degree or not. . . . They were saying in the record that he drank a quart of beer a day or more, and that he had a history of alcohol abuse for most of his adult life, even when he was working. . . . But actually, even using alcohol at times, I think throughout his life he was still able to function.

R. 643-44. While improved work functioning during periods of *sobriety* or mental health treatment could be relevant to understanding which of Plaintiff's limitations are caused by DAA and which by his co-occurring mental disorders, Dr. Feir's observation that Plaintiff has at times been able to function *while abusing alcohol* does not speak to that issue. Moreover, the record casts doubt on that observation—which after all materially undermines the ALJ's determination that Plaintiff is disabled when his alcohol abuse is taken into account.[10]

---

[10] The notes from the mental-status exam done September 8, 2005, by Dr. Kahoe state that Plaintiff "has a history of alcohol abuse for most of his adult life—a quart of beer a day or more." R. 184. But on June 14, 2007, Plaintiff testified that though he began drinking beer in high school, his drinking became "a real problem" and an "every day" "habit" "about four-and-a-half [or] five years ago," approximately 2002. *See* R. 714. NWCBH records from April 15, 2008, indicate that Plaintiff reported "he has been depressed since eight years ago [approximately 2000] after he lost his job as an Engineer at Lockheed. Ever since then, he started drinking more and more to numb himself since he was unable to find a job." R. 287. A review of the record indicates that Plaintiff's work as a geologist or geology technician was during his tenure at Lockheed Martin, where he was last employed in 1992. R. 68, 120, 123. Employment records further indicate that 1992 appears to be his last year of consistent employment and that Plaintiff subsequently worked intermittently for various employers, last earning significant income in 2001. R. 68-73. Plaintiff's statements regarding the onset of his "problem[atic]"

c. *Dr. Kahoe's and Dr. Smallwood's 2005 Findings*

Next, Defendant argues that Dr. Feir properly based her DAA materiality opinion on Dr. Kahoe's 2005 finding that Plaintiff's depression was only moderate. Def.'s Br. at 11. Following a single examination on September 8, 2005, Dr. Kahoe diagnosed Plaintiff with major depressive disorder, recurrent, moderate; panic disorder without agoraphobia; and alcohol dependence. R. 184-85. Dr. Kahoe did not opine on Plaintiff's work-related functional limitations other than to assign a GAF score of 55. R. 185. Reviewing consultant Dr. Smallwood, however, shortly thereafter completed a MRFC assessment in which he opined that Plaintiff had moderate limitations in three areas: the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. R. 205-06.

Because these opinions address the entirety of Plaintiff's mental limitations (i.e., those that are a product of DAA and those that are a product of depression and panic disorder), and the limitations these physicians assess are consistent with the ALJ's *non-DAA* RFC determination, the opinions provide some support for the proposition that Plaintiff could perform within the bounds of that non-DAA RFC. Such a conclusion again, however, merely undermines the ALJ's determination that Plaintiff is disabled when his alcohol abuse is taken into account. Certainly, because neither Dr. Kahoe's nor Dr. Smallwood's report attempts to separate the impacts of Plaintiff's DAA from the impacts of his co-occurring mental impairments of depression and panic disorder, those

---

drinking may not be completely consistent, but there is little support for Dr. Feir's belief that Plaintiff abused alcohol yet worked successfully during the time he was gainfully employed as a geology technician.

opinions do not provide any insight into whether the marked limitations found by the ALJ were due only to DAA or to a worsening of Plaintiff's co-occurring mental disorders. *See, e.g.*, R. 643 (Dr. Feir's testimony that Plaintiff was "definitely abusing alcohol" in September 2005).

### d. The June 5, 2009 Treatment Note

Defendant also argues that Dr. Feir properly based her DAA materiality opinion on NWCBH "treatment notes [that] show[ed Plaintiff] had a normal mood and normal affect." Def.'s Br. at 11. This argument refers to Dr. Feir's testimony that a June 5, 2009 NWCBH "progress note [states] his mood was normal. That's when he wasn't using alcohol. So he might not have any limitations if he had proper treatment, no alcohol and, and was taking his medication for depression. He could have no limitations." R. 646; *see* R. 440. But the cited remarks in the progress note were made just two weeks after the May 2009 hospitalization discussed above and do not purport to be a full assessment of Plaintiff's mental limitations, with or without alcohol abuse. These isolated remarks do not serve as substantial evidence to separate the effects of Plaintiff's mental impairments from the effects of his alcohol abuse, or the separate effects of any treatment therefor, and, thus, do not provide support for a determination of DAA materiality. *See* SSR 13-2p, 2013 WL 621536, at *9, *12; *Elliott*, 2008 WL 2783486, *9.

### e. Dr. Feir's General Expertise

Finally, Defendant argues that Dr. Feir properly relied upon her "training, experience, and treatment of alcoholics" to determine that Plaintiff's alcohol abuse was a material contributing factor to his disability. *See* Def.'s Br. at 11 (citing R. 649). When

asked whether Plaintiff would "still have a mood disorder without the alcohol," Dr. Feir replied "I have no idea. That would be speculative." R. 648. When questioned further regarding whether Plaintiff would not have the moderate limitations reflected in his release GAF scores in 2009 "if he had gotten treatment and if he had remained sober," Dr. Feir replied "[w]ell, that would be my guess based on my training, experience, and treatment of former alcoholics." R. 649. These qualified statements are not sufficient to support Dr. Feir's conclusion as to the effects of DAA in this matter.[11]

### f. Conclusion

In sum, Dr. Feir based her opinion in significant part on instances of improvement following hospitalizations in which Plaintiff received treatment for both substance abuse and mental health impairments, without noting the hybrid treatment or attempting to distinguish between effects of either type of treatment. Further, the remaining evidence she cites has little or no relevance to distinguishing the effects of Plaintiff's alcohol abuse from the effects of his mental impairments. Dr. Feir's opinion that Plaintiff would not have disabling limitations absent alcohol abuse does not "find adequate support in the medical evidence." *See Lee*, 117 F. App'x at 678. As such, the opinion itself is lacking and does not provide substantial support for the ALJ's materiality determination. *See McGoffin*, 288 F.3d at 1253.

---

[11] Even if the cited statements adequately supported Dr. Feir's conclusion, the ALJ would not have been able to rely solely on that testimony to support his determination that Plaintiff would not be disabled in the absence of DAA. *See* SSR 13-2p, 2013 WL 621536, at *9 ("Unlike cases involving physical impairments, [the SSA does] not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder [in making a DAA materiality determination].").

2.  Periods of Abstinence

In addition to Dr. Feir's testimony, the ALJ relied on alleged periods of sobriety to find that Plaintiff's functionality improved when he was not abusing alcohol.  *See* R. 27, 30.  The ALJ's decision refers to Plaintiff's acute inpatient psychiatric treatment as a "detoxification program" in 2008, stating "the claimant entered into medically supervised detoxification program in 2008 with GAF score of 29 and came out with GAF score of 55."  R. 27; *see also* R. 23; R. 283-89.  The ALJ also discussed "a period of sobriety in 2009."  R. 27.  The ALJ further stated that "In May 2009, he [w]as noted to be sober and had only 'moderate' symptoms, with a GAF score of 58.  In June 2009, he was assessed with a 'normal' mood and a GAF score of 58."  R. 27 (citing Exs. 14F, 15F).

These are references to Plaintiff's improved functioning immediately following the various hospitalizations at NWCBH in 2008 and 2009 when Plaintiff was treated for both alcohol abuse and mental impairments including depression, anxiety, and suicidal ideation or gesture.  As discussed above, SSR 13-2p prohibits reliance on that type of evidence when determining the materiality of DAA, unless a distinction is properly drawn between improvement due to abstinence from alcohol and improvement due to treatment of co-occurring mental disorders.  *See* SSR 13-2p, 2013 WL 621536 at *13; *Carrion*, 2015 WL 5709510, at *5 ("Reliance on improvement while in the highly structured environment of a hospitalized stay . . . is improper.").

The June 5, 2009 one-page progress note—indicating that Plaintiff's mood and affect were normal two weeks after the May 2009 NWCBH hospitalization—may not be distinguished from this rule.  The record does not indicate whether, as of the date the

progress note was written, Plaintiff had remained sober since his discharge from NWCBH. R. 440. It does reflect that at that time Plaintiff was still being treated for depression and anxiety, as shown by the appointment that occasioned the note and Plaintiff's prescription on the same date for an antidepressant medication. R. 440, 439. The isolated remarks in the progress note do not serve as substantial evidence to separate the effects of treatments for Plaintiff's mental impairments from the effects of treatment for his alcohol abuse and, thus, do not provide adequate support for a determination of DAA materiality. *See* SSR 13-2p, 2013 WL 621536, at *12; *cf. Young*, 2014 WL 4851565, at *30 (finding medical evidence demonstrated the separate effects of treatment for DAA and for the co-occurring mental disorders where records showed that when plaintiff was hospitalized for psychosis, she received no mental health treatment and required no psychiatric hospitalizations when she did not abuse any substance). Moreover, to the extent this record does indicate increased functioning when Plaintiff is not abusing alcohol, it reflects a one-time visit recorded only two weeks after Plaintiff was hospitalized. "The lack of any substantial period of abusive abstinence—and the related ability to assess functioning during such a period—undercuts any short-term and minor improvement in mostly acute situations." *Elliott*, 2008 WL 2783486, *9 (citing *Salazar*, 468 F.3d at 624).

The ALJ further stated that "[s]uch findings are also consistent with the claimant's reported activities and abilities in periods of sobriety, to-wit: the claimant reported that he prepared simple meals, cared for his dogs, and had a garden. He rode a bike, watched TV, read, cleaned and did laundry. He used a microwave. He could follow instructions

and had no problems with authority." R. 27 (citing Exs. 6E, 6F). Exhibits 6E and 6F reference events in July 2005, during which time the record indicates Plaintiff was "definitely abusing alcohol." R. 643. There is no evidence that these activities reflect Plaintiff's activities and abilities "in periods of sobriety." The ALJ's reliance upon them as evidence of Plaintiff's functioning without alcohol abuse is misplaced.[12]

### 3. Conclusion

SSR 13-2p provides that in order to find that DAA is a material contributing factor to disability, such that a claimant's application for benefits must be denied, there must be "evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA." SSR 13-2p, 2013 WL 621536, at *9. SSR 13-2p specifically requires that this determination be based on evidence in the record that "demonstrate[s] the separate effects of the treatment for DAA and for the co-occurring mental disorder(s)." *Id.* at *12. Neither the testimony of Dr. Feir nor the cited evidence of alleged periods of abstinence suffices as substantial evidence in support of the ALJ's DAA materiality determination in this case.

## CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner is REVERSED. Although Plaintiff's application for benefits has been pending a very long

---

[12] Defendant argues that the ALJ's DAA materiality determination was also supported by the 2005 MRFC assessment of Plaintiff by Dr. Smallwood. *See* Def.'s Br. at 9. While Dr. Smallwood found that "despite Plaintiff's long history of alcoholism, he remained able to prepare simple meals, care for his dogs, garden, ride a bike, clean, and do laundry," *see id.*, this finding alone "does not serve as evidence to separate the effects of Plaintiff's mental impairments from the effects of [his DAA]." *See Elliott*, 2008 WL 2783486, *9.

time, the Court concludes that remand for an immediate award of benefits, as requested by Plaintiff, is not appropriate. A new policy ruling, such as SSR 13-2p here, may warrant remand if "the ALJ did not have the benefit of the [SSR] when [the ALJ] arrived at [the] decision," and the Court "cannot determine whether [claimant's] evidence could have led to a different result had the ALJ assessed it with reference to the new [SSR]." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). Here, it may be possible—upon further medical examination and careful review of the medical evidence consistent with SSR 13-2p—that the effects of Plaintiff's treatment for alcohol abuse may be distinguished from his treatment for depression and panic disorder, and on that basis for the Commissioner to determine whether or not Plaintiff would be disabled in the absence of DAA. Accordingly, the case is REMANDED for further proceedings consistent with this opinion. A separate judgment will be issued.

IT IS SO ORDERED this 27th day of September, 2016.


CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE